**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court. Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3557-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

YAMILE LIAN,

     Defendant-Appellant.

_____

Submitted February 10, 2020 – Decided March 6, 2020

Before Judges Messano and Ostrer.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 94-02-0209.

Hegge & Confusione, LLC, attorneys for appellant (Michael James Confusione, of counsel and on the brief).

Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (David Michael Liston, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Yamile Lian appeals from the trial court's April 12, 2019 amended order denying, without an evidentiary hearing, her petition for post-conviction relief. We affirm in part, vacate in part, and remand for further proceedings.

I.

Lian collaterally challenges her 1994 conviction, after a guilty plea, of third-degree possession of cocaine with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and -5(b)(3). She received a two-year term of non-custodial probation. There was no direct appeal.

To support her petition, Lian argued that her plea attorney misled her about the immigration consequences of her conviction. Additionally, she contended her attorney had a conflict of interest, because the attorney also represented Lian's co-defendant, who was her paramour and the future father of her children. The indictment charged Lian and the man with possessing cocaine, N.J.S.A. 2C:35-10, and possession with intent to distribute. In her petition, she alleged that he was culpable; her involvement was "involuntary"; their attorney "only talked to him"; and she pleaded guilty to secure a non-custodial sentence for him.

A-3557-18T1

The PCR court denied the petition on the merits, without addressing the State's argument that it was untimely. In denying the claim of misadvice about immigration consequences, the PCR court explained that under applicable law when defendant pled, constitutionally effective attorneys were not required to advise a client about the immigration consequences of a plea; "they were only obligated to refrain from giving false or affirmatively misleading advice on that subject." (citing Padilla v. Kentucky, 559 U.S. 356 (2010), and State v. Gaitan, 209 N.J. 339 (2012)). Noting that Lian did not present a transcript of her plea hearing, the PCR court held that Lian failed to provide supporting evidence for her misadvice claim; rather, in her plea form, she acknowledged the risk that, as a non-citizen, she could be deported by virtue of her plea.

In denying the conflict-of-interest-based claim, the court concluded Lian was obliged to show that she did not waive the conflict. She failed to meet that burden, because she did not provide her plea transcript.

On appeal, Lian presents the following points for our consideration:

> The trial court erred in denying defendant's petition for post-conviction relief without an evidentiary hearing.
>
> A. The Court should grant defendant post-conviction relief on [the] ground that her trial counsel operated under a conflict of interest prohibited by State v. Land, 73 N.J. 24 (1977).

3

B. At the very least, the Court should remand this matter back to the trial court for further assessment and determination of the conflict of interest issue and an evidentiary hearing on whether defendant received ineffective assistance of counsel because of mis-advisement of the plea's immigration consequences.

## II.

We review de novo the PCR court's factual findings made without an evidentiary hearing. State v. Harris, 181 N.J. 391, 421 (2004). We also owe no deference to the trial court's conclusions of law. Ibid. Applying this standard of review, we affirm the court's denial of relief relating to Lian's claim regarding the immigration consequences of her conviction; but we vacate the court's denial relating to the conflict-of-interest-based claim, and remand to allow PCR counsel to expand the record.

We apply the familiar two-pronged Strickland standard to determine whether defendant has shown that (1) her counsel's performance was so deficient that it "fell below an objective standard of reasonableness," and (2) there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In a conviction based on a guilty plea, the petitioner must show "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial," Hill

v. Lockhart, 474 U.S. 52, 59 (1985), and doing so "would have been rational under the circumstances," Padilla, 559 U.S. at 372.

Petitioner bears the burden to establish the prima facie case. Gaitan, 209 N.J. at 350. "[W]e consider [a] petitioner's contentions indulgently and view the facts asserted . . . in the light most favorable to him [or her]." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). However, we require a petitioner to state "with specificity the facts upon which the claim for relief is based." R. 3:22-8. "[A] petitioner must do more than make bald assertions that [s]he was denied the effective assistance of counsel. [S]he must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, 321 N.J. Super. at 170.

A.

Lian's immigration-consequences-related claim fails because she has not established that her plea attorney was ineffective. Lian did not clearly allege that her attorney affirmatively provided "false or misleading information" regarding the likelihood of deportation, as required to establish ineffective assistance. State v. Nuñez-Valdéz, 200 N.J. 129, 138 (2009). Lian's certification is internally inconsistent. She alleged, "I was misled and misguided thinking that [the conviction] had no impact on my immigration status."

However, she does not describe her attorney's allegedly misleading statement. Rather, she asserts that they did not even discuss immigration consequences. "The lawyer never asked me what my legal status [sic] or even ask me if I was even a US Citizen or not." Referring to a second attorney who appeared at the plea hearing, she said, "[T]hey never told me I was going to be deported nor unable to one day become a US citizen. They just told me if I plead guilty he didn't have to go to jail and that everything was going to be fine."

Even if we assume her attorney did tell her "everything was going to be fine," Lian does not clearly allege that he did so in response to a question about immigration. The statement is too vague to constitute deficient representation under the first <u>Strickland</u> prong. <u>See</u> <u>State v. Marshall</u>, 148 N.J. 89, 158 (1997) (stating that an evidentiary hearing is not needed if "the defendant's allegations are too vague, conclusory, or speculative"). That is particularly so given the state of the law in 1994. As we explained in <u>State v. Brewster</u>, 429 N.J. Super. 387, 396 (App. Div. 2013), until 1996, the Attorney General could waive deportation; and even after that, deportation proceedings did not invariably follow a drug conviction. Notably, Lian was undisturbed by immigration officials for twenty-five years (twice the period in Brewster's case).

A-3557-18T1

In 2010, the U.S. Supreme Court in <u>Padilla</u> recognized the duty of an attorney to affirmatively inform a client that a conviction will result in deportation, where the law is "succinct, clear, and explicit," and the attorney must advise a client of the "risk of adverse immigration consequences" when the law is not as clear. 559 U.S. at 368-69. However, that new standard did not apply retroactively to when Lian pleaded guilty in 1994. <u>See</u> <u>Gaitan</u>, 209 N.J. at 373. Furthermore, even if the standard did apply retroactively, accurate advice in 1994 would apparently consist of informing Lian that she faced the risk of removal. <u>Brewster</u>, 429 N.J. Super. at 397-98. Her plea form accomplished that.

As Lian's immigration-consequences-based claim fails on its merits, we need not address its timeliness.

B.

We discern greater potential merit in Lian's claim that her attorney suffered from a conflict of interest that deprived her of the right to effective assistance of counsel. Our Supreme Court held in <u>State v. Land</u>, 73 N.J. 24 (1977) that, absent a knowing and intelligent waiver, an attorney could not represent a husband and wife as co-defendants in a criminal drug prosecution. Justice Schreiber observed, "The inherent difficulty in representing more than

7

one defendant in a criminal proceeding and in steering a course which will promote the interests of each, but which will not be to the detriment of any one, exposes the infirmity of dual representation." Id. at 30.

The conflict is of constitutional significance. "[I]n the absence of waiver, if a potential conflict of interest exists, prejudice will be presumed resulting in a violation of the New Jersey constitutional provision guaranteeing the assistance of counsel." Id. at 35; see also State v. Norman, 151 N.J. 5, 24-25 (1997); State v. Bellucci, 81 N.J. 531, 543 (1980).[1]

The Land holding was thereafter embodied in Rule 3:8-2, which states, "No attorney or law firm shall be permitted to enter an appearance for or represent more than one defendant in a multi-defendant indictment without

---

[1] We recognize that our Court has since identified a "two-tiered approach" to conflicts, applying Land's presumption of prejudice, absent waiver, only to "per se conflicts." State v. Cottle, 194 N.J. 449, 467-68 (2008). However, we need not address those second-tier cases requiring a prejudice showing, see State v. Bell, 90 N.J. 163, 171 (1982) (requiring prejudice showing "where deputy public defenders represent multiple defendants"), because the Court has found a "per se conflict on constitutional grounds [in] cases in which 'a private attorney, or any lawyer associated with that attorney, is involved in simultaneous dual representations of codefendants.'" Cottle, 194 N.J. at 467 (quoting Norman, 151 N.J. at 25). We presume Lian was represented by private counsel, as she referred to the attorney she and her paramour "hired."

securing permission of the court."[2] The motion must be made in the defendants' presence. Ibid. "[T]here is a strong presumption against waiver," and "[i]n no event is waiver to be found from a silent record." Bellucci, 81 N.J. at 544. The court is also not obliged to accept a waiver if the client does not fully understand the consequences of the waiver; or it would lead to an unjust result. State v. Carreaga, 249 N.J. Super. 129 (Law Div. 1991). In particular, dual representation is problematic involving two family members. Id. at 134.

Land permits a waiver of a potential conflict. If there exists an actual conflict between co-defendants, our jurisprudence demands more. To protect a defendant's right to effective assistance of counsel, the court must reject a waiver and prevent dual representation. State ex rel. S.G., 175 N.J. 132, 139-40 (2003). "The Sixth Amendment right to effective assistance of counsel . . . requires a defense attorney's representation to be 'untrammeled and unimpaired.'" Ibid. (quoting Bellucci, 81 N.J. at 538) (internal citation omitted). "[A]n attorney's divided loyalty can undermine a defendant's Sixth Amendment right to effective assistance of counsel." Id. at 139 (citing United States v. Moscony, 927 F.2d 742, 748 (3d Cir. 1991)); see also Wheat v. United States, 486 U.S. 153, 162

---

[2] The Rule as it existed when Lian pleaded guilty required permission from the Assignment Judge. R. 3:8-2 (1993).

(1988). "Ineffectiveness is . . . presumed when counsel 'actively represented conflicting interests.'" United States v. Cronic, 466 U.S. 648, 661 n.28 (1984) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)); see also State v. Miller, 216 N.J. 40, 63 (2013).

Applying these principles, and indulgently reading Lian's certification, we are satisfied that she has alleged an actual conflict. She asserted that she was "involuntary [sic] involved" in the business of her paramour, who "was dealing with drug [sic] and bad people." Indulgently read, she alleged that she did not intentionally participate in his drug business. That would clearly counter an essential element of the possession-with-intent-to-distribute count, see N.J.S.A. 2C:35-5(a), and raise questions about whether she actually or constructively possessed the cocaine or did so knowingly or purposely, see N.J.S.A. 2C:35-10; N.J.S.A. 2C:2-1(c). On the other hand, she contended her paramour was guilty of drug distribution. An attorney could not provide her loyal and untrammeled representation while also representing her paramour. The actual conflict could not be cured by a waiver. Thus, in order to establish a prima facie case for PCR, Lian was not obliged, as the State contends, to prove she waived the conflict by presenting her plea transcript.

We acknowledge that factual issues need to be explored at a hearing. Lian's dual representation argument is based on the claim that she and her paramour jointly hired counsel. She said, "We were not accessed [sic] correctly by the lawyer <u>we hired</u>." (Emphasis added). After alleging that the attorney did not inquire about her immigration status, and she had difficulty communicating because of her limited English, she said, "I was treated very unfairly because the lawyer never talked to me and only talked to him. The lawyer ignored me completely and I was misinformed about the whole situation."

She added that a second attorney actually appeared in court to represent her at the plea hearing. "The lawyer didn't even represent me in court and sent somebody else that didn't speak Spanish." However, Lian implies that the second attorney was associated with the first, and implemented the strategy devised by the attorney she and her paramour hired. "They never explained to me about the consequences of pleading guilty to help somebody . . . . They just told me if I plead guilty he didn't have to go to jail and that everything was going to be fine."[3]

_____

[3] Perhaps, the second attorney was sent to court to represent Lian at her plea hearing with the purpose of avoiding the dual representation that should trigger judicial inquiry. However, the appearance of the second attorney – even if the attorney was not in the same firm as the first – did not necessarily erase the

Inasmuch as Lian has presented a prima facie claim of ineffective assistance, we must address the State's contention that the petition should be denied as untimely. A person may file her first PCR petition outside the five-year period upon a showing of excusable neglect and a fundamental injustice. R. 3:22-12(a)(1)(A). To establish a fundamental injustice "a petitioner would not have to prove that the issue of concern cost [her] the case," rather, "'there should at least be some showing that * * * [the alleged violation] played a role in the determination of guilt.'" State v. Mitchell, 126 N.J. 565, 587 (1992) (quoting State v. Laurick, 120 N.J. 1, 13 (1990)); see also State v. Nash, 212 N.J. 518, 547 (2013). The alleged actual conflict here did play a role in the determination of guilt, as Lian contends, indulgently read, that she had viable defenses, and she pleaded guilty only to save her paramour from a custodial sentence.

The question is whether the prolonged delay in filing her petition may be attributed to excusable neglect. Lian must present more than a "plausible explanation" for her delay. State v. Norman, 405 N.J. Super. 149, 159 (App. Div. 2009). We must "'consider the extent and cause of the delay, the prejudice

---

actual conflict, if Lian decided to plead guilty based on the advice of the lawyer who also represented her paramour.

A-3557-18T1

to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits.'" Ibid. (quoting State v. Afanador, 151 N.J. 41, 52 (1997)).

In Norman, we found that the defendant met that threshold where the plea hearing was patently inadequate. We also held the petition was timely in State v. Maldon, 422 N.J. Super. 475, 482 (App. Div. 2011), where defense counsel misadvised the defendant that he would not be subject to civil commitment, and the defendant promptly filed his petition upon learning that his attorney's advice was incorrect. But see Brewster, 429 N.J. Super. at 400 (stating that the "[d]efendant cannot assert excusable neglect simply because he received inaccurate deportation advice from his defense counsel"). If Lian's conflict claim is substantiated, then she presents a compelling excuse for her delay, in that she never received an attorney's undivided loyalty, and she only discovered that deprivation after she learned her conviction's impact on her immigration status.

We also note that Lian may still file a motion to withdraw her plea, which, unlike a PCR petition, may be filed at any time after sentencing to correct a "manifest injustice," R. 3:21-1, and would be subjected to the four-prong standard under State v. Slater, 198 N.J. 145 (2009). See State v. O'Donnell, 435

13

N.J. Super. 351, 368-73 (App. Div. 2014) (discussing the differences between the time frames and standards governing a PCR petition and a motion to withdraw a plea). We recognize that "the longer a defendant delays in seeking to withdraw a plea, the greater [the] burden he or she will bear in establishing 'manifest injustice[]' . . . ." Id. at 370. Nonetheless, the court must be mindful that "[a] core concern underlying motions to withdraw guilty pleas is to correct the injustice of depriving innocent people of their liberty." Slater, 198 N.J. at 158. Lian asserts her innocence, and contends she decided to plead guilty to benefit her paramour without the benefit of loyal and dedicated counsel to dissuade her from doing so.

We remand to the trial court to reconsider Lian's PCR claim based on the alleged conflict of interest. Should Lian choose to file a motion to withdraw her plea, the court may consider the applications together, subjecting each to the applicable standards. See O'Donnell, 435 N.J. Super. at 371 (stating a court must "view the applications separately, and . . . avoid conflating the two").

Affirmed in part; vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3557-18T1